Slip Op. 18-1

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| NATIONAL NAIL CORP., | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| SHANDONG ORIENTAL CHERRY | : | Before: Richard K. Eaton, Judge |
| HARDWARE GROUP CO., LTD., | : | |
| | : | Consol. Court No. 16-00052 |
| Consolidated-Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## OPINION and ORDER

[United States Department of Commerce's final results remanded.]

Dated: January 2, 2018

*Adams C. Lee*, Harris, Bricken, McVay LLP, of Seattle, WA, argued for plaintiff National Nail Corp.

*Brittney R. McClain*, Kutak Rock LLP, of Washington, DC, argued for consolidated-plaintiff Shandong Oriental Cherry Hardware Group Co., Ltd. With her on the brief were *Lizbeth R. Levinson* and *Ronald M. Wisla*.

*Sosun Bae*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With her on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director. Of Counsel on the brief was *Jessica R. DiPietro*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Eaton, Judge: This consolidated action [1] involves the final results of the sixth administrative review of the antidumping duty order on imports of certain steel nails from the People's Republic of China ("China" or the "PRC"), covering the August 1, 2013, through July 31, 2014, period of review ("POR"). *See Certain Steel Nails From the PRC*, 81 Fed. Reg. 14,092 (Dep't Commerce Mar. 16, 2016), as amended, 81 Fed. Reg. 19,136 (Dep't Commerce Apr. 4, 2016) (correction notice), and accompanying Issues and Decision Mem., P.R. 259 ("Final Issues & Dec. Memo") (collectively, the "Final Results").

In the Final Results, the United States Department of Commerce's ("Commerce" or the "Department") determined that consolidated-plaintiff Shandong Oriental Cherry Hardware Group Co., Ltd. ("Shandong"), a mandatory respondent in the review, was not eligible for a separate rate, and assigned it the PRC-wide rate of 118.04 percent, based on adverse facts available ("AFA"). Commerce also collapsed Shandong and its five affiliates[2] into a single entity stating that it was doing so in order to avoid circumvention of the PRC-wide rate. *See* Final Issues and Dec. Memo at 1-2.

Before the court, Shandong and plaintiff National Nail Corp. ("National Nail") [3] (collectively, "plaintiffs") challenge Commerce's use of AFA and its assignment of the

---

[1]     On July 8, 2016, Court No. 16-00059 was consolidated with the lead case, Court No. 16-00052. *See* Order dated July 8, 2016, ECF No. 21.

[2]     Shandong's reported affiliates are: Shandong Oriental Cherry I&E, Jining Huarong Hardware, Heze Products Co., Jining Dragon Fasteners, and Jining Yonggu Metal. *See* Decision Mem. for the Prelim. Results of the 2013-2014 Antidumping Admin. Rev. (Aug. 28, 2015), P.R. 217 at 10.

[3]     National Nail is a U.S. importer that imported nails produced and exported by Shandong during the POR. *See* Compl., ECF No. 5, ¶ 6.

PRC-wide rate to Shandong and its affiliates, as unsupported by substantial evidence and otherwise not in accordance with law. *See* National Nail's Mem. Supp. Mot. J. Agency R., ECF No. 34 ("National Nail Br."); National Nail's Reply, ECF No. 49; Shandong's Mem. Supp. Mot. J. Agency R., ECF No. 35-2 ("Shandong Br."); Shandong's Reply, ECF No. 50. Plaintiffs argue that Commerce's use of AFA was not justified, and that the record supports a finding that Shandong was eligible for a separate rate. Accordingly, plaintiffs ask the court to remand this matter to Commerce to re-determine Shandong's antidumping rate. *See* National Nail Br. 45; Shandong Br. 35.

The United States, on behalf of Commerce, argues that the Final Results should be sustained. *See* Def.'s Resp. Opp'n Pls.' Mot. J. Agency R., ECF No. 41.

Jurisdiction lies pursuant to 28 U.S.C. § 1581(c) (2012). Because Commerce improperly imputed the incompleteness and unreliability of some of Shandong's questionnaire responses to its separate rate responses, this matter is remanded to Commerce for further action in accordance with this Opinion and Order.

## BACKGROUND

In August 2008, Commerce issued an antidumping duty order on certain steel nails from the PRC. *See Certain Steel Nails From the PRC*, 73 Fed. Reg. 44,961 (Dep't Commerce Aug. 1, 2008). Since then, the order has been the subject of annual administrative reviews, pursuant to 19 U.S.C. § 1675(a) (2012). For the sixth administrative review, Commerce selected Shandong as a

mandatory respondent.[4] *Initiation of Antidumping and Countervailing Duty Admin. Reviews*, 79 Fed. Reg. 58,729 (Dep't Commerce Sept. 30, 2014).

In November 2014, the Department issued its standard nonmarket economy ("NME") antidumping questionnaire to Shandong. *See* Commerce's Original Questionnaire to Shandong (Nov. 20, 2014), P.R. 31, ECF No. 52-6, bar code 3242605-01 ("Original Questionnaire"). Section A of the Original Questionnaire requested information regarding Shandong's corporate structure, accounting practices, and general information about sales of the merchandise under review. It also contained a subsection of questions that a company seeking a separate rate had to complete. This subsection included questions about corporate ownership, control, management, and any ownership or control by a provincial or local government. *See* Original Questionnaire at A-1 to A-5.

Section C sought information regarding the U.S. market, including Shandong's U.S. sales and other data necessary to calculate the price of its merchandise sold in or to the U.S. market during the POR (export price); and Section D asked for data regarding Shandong's factors of production ("FOP"), *i.e.*, the inputs consumed to produce the nails it sold in or to the United States during the POR.[5]

In addition to the Original Questionnaire, Commerce issued multiple supplemental

---

[4]     While Shandong applied for, and received, a separate rate in prior reviews, the sixth administrative review was the first time it participated as a mandatory respondent. *See, e.g.*, *Certain Steel Nails from the PRC*, 80 Fed. Reg. 18,816, 18,817 (Dep't Commerce Apr. 8, 2015) (final results of the fifth annual review in which Shandong was assigned a rate of 16.62 percent).

[5]     Where, as here, the subject merchandise is exported from an NME country, Commerce determines the normal value of the merchandise by valuing the FOP used to produce the merchandise in a market economy country, or surrogate country. 19 U.S.C. § 1677b(c).

questionnaires—eleven of them in all over the course of four months. Specifically, between April 20, 2015, and July 2, 2015, Commerce issued four supplemental Section A questionnaires, two supplemental Section C questionnaires, and five supplemental Section D questionnaires. Commerce was not satisfied with Shandong's responses, however, and in August 2015, preliminarily determined that its responses were generally incomplete, inaccurate, and unreliable. Therefore, Commerce determined that Shandong "significantly impeded" the proceeding, and thus, that the use of "facts otherwise available," pursuant to 19 U.S.C. § 1677e(a), was justified. *See Certain Steel Nails From the PRC*, 80 Fed. Reg. 53,490 (Dep't Commerce Sept. 4, 2015), and accompanying Decision Mem. for the Prelim. Results of the 2013-2014 Antidumping Admin. Review (Aug. 28, 2015), P.R. 217 ("Preliminary Issues & Dec. Memo"). Also, because Commerce found that Shandong had failed to cooperate to the best of its ability in responding to Commerce's requests for information, Commerce drew an adverse inference in selecting from among the facts available, pursuant to 19 U.S.C. § 1677e(b). *See* Preliminary Issues & Dec. Memo at 1.

Despite its determination that Shandong's questionnaire responses were generally incomplete and unreliable, Commerce found that Shandong's financial statements, submitted in response to the Section A questionnaire, nonetheless could be used as a basis for its affiliation determination. By way of explanation, Commerce stated:

> While[ ] the Department has found that [Shandong's] submissions were generally so incomplete and unreliable that we could not use them[,] the Department finds that the record evidence to which it is citing for the affiliation determination is independent, audited financial statements which were not prepared for purpose[s] of this administrative review and thus may be relied on for purposes of determining that [Shandong] is affiliated with its five reported PRC affiliates.

Preliminary Issues & Dec. Memo at 11. In particular, Commerce found that the record indicated

> (1) the PRC shareholders of [Shandong] are family members (Family B)[6] and thus represent a "family grouping" that may be in a position to "exercise restraint or control" over [Shandong]; (2) both [Shandong] and Shandong Oriental Cherry I&E are wholly owned by Family B; (3) Jining Huarong Hardware is the wholly-owned subsidiary of [Shandong]; and (4) [Shandong] is the largest shareholder of Heze Products Co., Jining Dragon Fasteners, and Jining Yonggu Metal.

Preliminary Issues & Dec. Memo at 10-11. Commerce therefore collapsed Shandong and its affiliates into a single entity. *See* Final Issues & Dec. Memo at 62-63.

When it came time to determine Shandong's eligibility for a separate rate, however, Commerce found it could not rely on the separate rate responses Shandong submitted in response to the Section A questionnaire. This was not because it found anything lacking in the questionnaire responses that sought information relating to Shandong's eligibility for a separate rate. Rather, because Commerce found incomplete and unreliable Shandong's Section C and Section D questionnaire responses regarding its affiliate Jining Dragon Fasteners' production and U.S. sales of shooting nails, it concluded that the separate rate responses must be unreliable too. *See* Final Issues & Dec. Memo at 57 ("[T]he incompleteness and unreliability of information concerning Jining Dragon Fasteners' sales of shooting nails calls into question the ability of the Department to rely on the separate rate information provided by Jining Dragon Fasteners, which includes pertinent information on its sales process, such as the negotiation of subject merchandise sales to the United States and the setting of prices with other exporters during the POR. As such, what information we do have on the record calls into question the reliability and completeness of the separate rate information submitted for [Shandong], as a whole."). In other

---

[6]         The identity of "Family B" is business proprietary information. *See* Preliminary Issues & Dec. Memo at 10 n.34.

words, although Commerce considered the financial statements that Shandong submitted as a part of its Section A responses reliable for purposes of its collapsing determination, it deemed those responses unreliable for purposes of determining Shandong's eligibility for a separate rate, based on its decision to apply AFA to Shandong's Section C and D questionnaire responses. Therefore, the Department concluded that Shandong was not eligible for a separate rate and assigned Shandong and its affiliates the PRC-wide rate of 118.04 percent. *See* Final Issues & Dec. Memo at 63. Notably, at no point did Commerce question the reliability of answers to questions designed to determine the extent of Shandong's relationship to the Chinese government, including any ownership or control by the Chinese government. This lawsuit followed.

## STANDARD OF REVIEW

The court will sustain a determination by Commerce unless it is "unsupported by substantial evidence, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## LEGAL FRAMEWORK

In an antidumping proceeding, Commerce relies primarily on interested parties' submissions of factual information to create an administrative record based on which it makes its dumping determinations. *See* 19 C.F.R. § 351.301(a) (2014) ("The Department obtains most of its factual information in antidumping . . . proceedings from submissions made by interested parties during the course of the proceeding."); *see also QVD Food Co. v. United States,* 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("Although Commerce has authority to place documents in the

administrative record that it deems relevant, the burden of creating an adequate record lies with

interested parties and not with Commerce." (internal quotation marks, brackets, and citations

omitted)). When "'Commerce has received less than the full and complete facts needed to make

a determination'" from the respondents, it may rest its determinations on "facts otherwise

available . . . 'to fill in the gaps.'" *Gerber Food (Yunnan) Co. v. United States*, 29 CIT 753, 767,

387 F. Supp. 2d 1270, 1283 (2005) (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373,

1381 (Fed. Cir. 2003)). Therefore, if a respondent in a review "withholds information that has

been requested by the [Department]," "fails to provide [requested] information by the deadlines

for submission of the information or in the form and manner requested," "significantly impedes a

proceeding," or "provides such information but the information cannot be verified," Commerce

is permitted to use "facts otherwise available" to determine the rate. 19 U.S.C. § 1677e(a)(2).

Once Commerce finds that the use of facts otherwise available is warranted, if the

Department further "finds that an interested party has failed to cooperate by not acting to the best

of its ability to comply with a request for information," it "may use an inference that is adverse

to the interests of that party in selecting from among the facts otherwise available," pursuant to

19 U.S.C. § 1677e(b). Accordingly, Commerce may apply AFA if it determines that (1) the use

of facts otherwise available is warranted under subsection 1677e(a); and (2) a respondent has

failed to cooperate to the best of its ability under subsection 1677e(b). The "best of its ability"

standard asks whether the respondent has "put forth its maximum effort to provide Commerce

with full and complete answers to all inquiries in an investigation." *Nippon Steel*, 337 F.3d at

1382.

Commerce's determination as to whether AFA is justified with respect to sale or prices,

however, is distinct from its analysis of whether a respondent is eligible for a separate dumping rate. "This Court has consistently held that it is unreasonable for Commerce to impute the unreliability of a company's questionnaire responses and submissions concerning its factors of production and/or U.S. sales to its separate-rate responses when there is no evidence on the record indicating that the latter were false, incomplete, or otherwise deficient." *Yantai Xinke Steel Structure Co. v. United States*, 36 CIT __, __, Slip Op. 12-95 at 27 (July 18, 2012) (citing *Shandong Huarong Gen. Group Corp. v. United States*, 27 CIT 1568, 1595-96, Slip Op. 03-135 at 43-44 (Oct. 22, 2003); *Gerber Food*, 29 CIT at 772, 387 F. Supp. 2d at 1287; *Qingdao Taifa Group Co. v. United States*, 33 CIT 1090, 1098, 637 F. Supp. 2d 1231, 1240-41 (2009); *Since Hardware (Guangzhou) Co. v. United States*, 34 CIT 1262, 1270-71, Slip Op. 10-108 at 16 (Sept. 27, 2010)).

Where a respondent operating in an NME country, such as China, desires a separate rate (*e.g.*, not the PRC-wide rate), it must rebut the presumption that it is under government control. *See Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1372 (Fed. Cir. 2003) (citing *Sigma Corp. v. United States*, 117 F.3d 1401, 1405-07 (Fed. Cir. 1997)); *see also Transcom, Inc. v. United States*, 294 F.3d 1371, 1373 (Fed. Cir. 2002) ("Under the NME presumption, a company that fails to demonstrate independence from the NME entity is subject to the countrywide rate, while a company that demonstrates its independence is entitled to an individual rate as in a market economy."). To rebut this presumption, an exporter must "affirmatively demonstrate" its entitlement to a separate rate by showing an absence of government control, both in law (*de jure*) and in fact (*de facto*). *See Sigma*, 117 F.3d at 1405. It may do this through its answers to Commerce's questions about corporate ownership, control,

management, and any ownership or control by a provincial or local government. For example, the absence of *de jure* government control can be demonstrated through the absence of restrictive stipulations associated with an individual exporter's business and export licenses; any legislative enactments decentralizing control of companies; and any other formal measures by the government decentralizing control of companies. *See Sparklers From the PRC*, 56 Fed. Reg. 20,588, 20,589 (Dep't Commerce May 6, 1991) (final determination). Absence of *de facto* government control is assessed by evidence that each exporter sets its prices independently of the government and of other exporters and that each exporter keeps the proceeds of its sales. *Sigma*, 117 F.3d at 1405 (citing *Tianjin Mach. Import & Export Corp. v. United States*, 16 CIT 931, 935, 806 F. Supp. 1008, 1013-14 (1992)).

## DISCUSSION

Plaintiffs contend that Commerce acted contrary to law by assigning Shandong the PRC-wide rate, pointing out that Commerce's "separate rate analysis is separate and distinct from the application and selection of an AFA rate." National Nail Br. 43; Shandong Br. 31. Moreover, plaintiffs contend that "the administrative record established that [Shandong] did, in fact, operate free from government control and thus was entitled to a separate, company-specific rate." Shandong's Br. 31. For plaintiffs, Commerce cannot disregard its separate rate information as "tainted just because there were other deficiencies in the respondent's sales or [factors of production] data." National Nail Br. 43 (citation omitted). Therefore, they ask the court to

remand this matter to Commerce instructing it to "apply a more appropriate AFA rate than the

PRC-wide rate."[7]  National Nail Br. 45.

Plaintiffs' argument has merit. After having reviewed the shortcomings in the

questionnaire responses relating to (1) factors of production, (2) sales, and (3) product

specifications, Commerce stated in its final separate rate discussion:

> [T]he Department incorporates its collapsing analysis for [Shandong] with its five
> affiliates for the final results . . . . Therefore, because the Department is applying
> total[8] AFA to [Shandong], and placing it in the PRC-wide entity since it has
> [been] found to not be entitled to a separate rate, it will be subject to the
> PRC-wide rate.

Final Issues & Decision Memo at 63. Commerce, however, neither discussed Shandong's

separate rate responses, nor assessed their accuracy or completeness when deciding to apply

AFA to those responses. The denial of a separate rate, then, appears to be based on deficiencies

in questionnaire responses unrelated to evidence dealing with whether or not Shandong was part

of the PRC-wide entity. This is particularly troublesome since Commerce found that the financial

and corporate evidence on the record regarding the relationships between and among Shandong

and its affiliates was complete and reliable enough to make its collapsing determination. Despite

---

[7]       Plaintiffs do not appear to challenge Commerce's decision to collapse Shandong
and its affiliates into a single entity. Rather, they argue that the "evidence that
supported [Commerce's] determination to collapse [Shandong] with its affiliates would also support a
determination that [Shandong] and its affiliates were not controlled by the Chinese government."
National Nail Br. 17.

[8]       While "total AFA" is not referenced in either the statute or the agency's
regulations, it can be understood within the context of this case as referring to Commerce's
application of the "facts otherwise available" and "adverse inferences" provisions of 19 U.S.C.
§ 1677e to all determinations with respect to Shandong, other than those dealing with collapsing,
after finding some of its questionnaire responses unreliable.

this finding, the Department declined to make a determination as to whether the facts on the

record demonstrated an absence of *de jure* or *de facto* government control over Shandong.

Therefore, the only possible conclusion is that Commerce based its decision to assign Shandong

the PRC-wide rate on the finding that its responses regarding FOP and sales data were unreliable,

even though there was nothing on the record to suggest that Shandong was other than truthful

when answering questions relating to government control. This Commerce cannot do. *See Yantai*

*Xinke*, 36 CIT at __, Slip Op. 12-95 at 27; *Fresh Garlic Producers Ass'n v. United States*, 39

CIT __, __, 121 F. Supp. 3d 1313, 1328 (2015) ("Commerce cannot ignore a party's separate

rate information solely because it selects [ ] AFA, due to defects related to sales data." (citations

omitted)).

    Because Commerce made no finding that Shandong's separate rate responses were

inaccurate or otherwise deficient, its separate rate analysis is unsupported by substantial

evidence. *See Shenzhen Xinboda Indus. Co. v. United States*, 40 CIT __, __, 180 F. Supp. 3d

1305, 1316 (2016) ("When Commerce fails to make a finding that a respondent's separate rate

responses were inaccurate or deficient, its denial of a separate rate is unsupported by substantial

evidence." (citation omitted)). Accordingly, the court remands so that Commerce may conduct a

separate rate analysis with respect to Shandong and, if it determines that Shandong is eligible for

a separate rate, to determine that rate. *See Since Hardware*, 34 CIT at 1271, Slip Op. 10-108 at

17 (remanding where "[t]he Department . . . made no specific finding that the responses

concerning state control were inaccurate.").

## CONCLUSION and ORDER

Therefore, in accordance with the foregoing, it hereby

**ORDERED** that this matter is remanded to Commerce; it is further

**ORDERED** that on remand Commerce shall evaluate the evidence on the record regarding Shandong's eligibility for a separate rate, including the information it submitted in response to Section A of Commerce's questionnaire, and determine whether such evidence demonstrates an absence of *de jure* and *de facto* control by the Chinese government; it is further

**ORDERED** that if Commerce determines that Shandong is eligible for a separate rate, it shall determine a separate rate for Shandong; and it is further

**ORDERED** that the remand results shall be due ninety (90) days following the date of this Opinion and Order; any comments to the remand results shall be due thirty (30) days following the filing of the remand results; and any responses to those comments shall be filed fifteen (15) days following the filing of the comments.


                                                         /s/ Richard K. Eaton
                                                       Richard K. Eaton, Judge


Dated: January 2, 2018
       New York, New York